In re INTEGRATION OF STATE BAR (Claims Under Code Revision Project).

*100 P. 2d 1000.*

No. 415 (a). Feb. 13, 1940.

DANNER, J. In 1929 the Legislature passed the State Bar Act, creating the State Bar of Oklahoma and providing for a Board of Governors, President, and other officers. Section 4210, O. S. 1931, et seq., 5 Okla. St. Ann. § 21 et seq.

In 1937 the Legislature passed an act providing for and authorizing surveys and drafts of needed revisions of the statutory law of the state and authorizing and empowering said Board of Governors to proceed with such work, known as the "Code Revision Project" and to make contracts for carrying out the said purposes. Chapter 22, p. 44, S. L. 1937, noted under 75 Okla. St. Ann. § 1. That act included a provision that the State Bar of Oklahoma should make a full and complete report of its findings, suggestions, and revisions to the next session of the Legislature. It further appropriated an amount for accomplishing the work.

In the autumn of 1938 the State Bar of Oklahoma, through its Board of Governors, employed Francis Stewart to act as director of, and to complete, the project undertaken by it pursuant to the above act. Thereafter and before the convening of the 1939 Legislature the State Bar entered into an agreement with the Works Progress Administration to assist with the work contemplated by the act. There was delay in approval of this agreement and by the time it was finally approved it was impossible for the federal agency to furnish the help in numbers or kinds contemplated, but by agreement with the Works Progress Administration the project went forward in a modified form and was continued. It is evident that neither the Works Progress Administration, the State Bar, nor the State Auditor or Treasurer considered that this agreement ended with the 1939 legislative session, for the work continued and payment was made for the months of May and June of 1939, after the Legislature had adjourned.

By section 6 of article 1, chapter 22, p. 70, S. L. 1939, the 1939 Legislature repealed the State Bar Act, supra. This act was approved April 29, 1939, without an emergency clause, and became effective July 29, 1939.

During the last part of June, 1939, however, the Board of Governors, anticipating the effective date of the 1939 act, presented the question of their status and the status of the project to this court, and on June 29, 1939, this court replaced the Board of Governors with an Executive Council, and conferred upon it the powers of the Board of Governors of the State Bar, and upon its Chairman the powers of the President of the State Bar. On June 30, 1939, this court directed Mr. Stewart to notify the federal agency that the work would be continued under the arrangement made by it, and the work was continued. The claims have been properly submitted and approved by the Chairman of the Executive Council.

The matter now under consideration is the question of payment of claims incurred in connection with the Code Revision Project. Said claims are for services of the director and for rent and incidentals arising out of continuation of the project under the above-mentioned arrangement made by the State Bar with the Works Progress Administration, the work having been continued since June 30, 1939, when this court entered its above-mentioned order in reference thereto. The claims are filed against the appropriation made under chapter 22, p. 44, Session Laws 1937, supra. The State Auditor has raised questions concerning their validity, on account of the passage of chapter 22, p. 68, Session Laws 1939, 5 Okla. St. Ann. § 12 et seq., supra, repealing the State Bar Act.

The State Auditor contends that it was not the intention of the Legislature to continue the appropriation beyond the adjournment of the 1939 Legislature; that the order of this court authorizing the continuance of the work was without authority of law and was an exercise of power not judicial.

In a letter to the State Bar in 1937 the State Auditor's office interpreted the appropriation as not lapsing until November of 1939, two and a half years after the approval of the 1937 act making the appropriation. As heretofore shown, payments for May and June, 1939, after adjournment of the 1939 Legislature, were made without question. These interpretations are persuasive. The appropriation act does not in terms declare that the appropriation should lapse with the adjournment of the 1939 Legislature, and in ordinary course it would not lapse until November 22, 1939, two and a half years after approval of the appropriation bill. Article 5, sec. 55, Const.

The argument is made, however, that because the act calls for a report to the 1939 Legislature—"a full and complete" report—this implied that the work should then end. But the act must be interpreted as a whole. The title authorizes surveys and drafts of needed revisions and authorizes the Board of Governors of the State Bar to carry out these purposes. Section 1 provides that the Board of Governors of the State Bar was empowered to proceed with the proper and necessary steps *leading to* a complete revision of the laws, to make annotations, surveys, and drafts of laws; and it was given the power to contract in reference to the work. The work to be done was, therefore, preliminary work looking to a future revised code as provided by the Constitution. The act also stated that the work was pursuant to the purposes of the Bar Act. This preliminary work would not necessarily cease until the Legislature should adopt a code.

The title of the act does not mention a report, nor is there language in the act stating that the work should cease with the filing of the report. Nor has there been any act specifically withdrawing the appropriation made for the purpose. There was no reason, therefore, why the parties should have been restricted to anything except the money available, in their arrangements to carry on the surveys, annotations, and suggestions to be used in future revision. It appears that the amount available in the appropriation would finance the arrangement substantially as long as the federal funds would last. The arrangement with the federal administration was made when the bar had the right to make its agreement and to pledge the funds. The administration required an agreement that the project would be completed even if the funds allotted proved insufficient. This should require the performance of the contract to the extent of the funds available, at least.

Good faith with the federal agency required the carrying out of the arrangement with it as far as possible. The presumption favored the validity of the agreement as interpreted by the parties charged with the performance thereof. This court, therefore, in its order of June 29 and June 30, 1939, was not usurping the functions of the legislative or executive arms of the government, but was merely recognizing the propriety of proceeding under an existing arrangement. The arrangement was in full operation at the time the orders were entered. Both the federal agency and the director have interpreted the orders of this court as authorizing the continuance of the arrangement and have acted thereon in good faith. When the former President of the State Bar declined to proceed further with his duties, the court had a right to appoint some one to perform them. The power conferred upon him by the act of 1937, supra, was not as a person but as an officer or a trustee of a power, passing to the person who succeeded to that power.

Furthermore, with the failure of the Board of Governors to act further on June 29, 1939, and June 30, 1939, this court had full power to act directly for them or to designate some agency or organization so to act. This inherent power has recently been exerted in the adoption of the new rules relating to an integrated bar. In re Integration of State Bar of Oklahoma, 185 Okla. 505, 95 P. 2d 113. The power exercised is therefore not one which is exclusively legislative. It is unnecessary, therefore, to determine the question of the validity or

invalidity of the repealing clause of the act of 1939, supra. The agreement with the federal agency is sustainable without reference thereto. It should not be impaired without compelling reasons.

The reasons given by the auditor are not sufficient to warrant withholding payment. The auditor should allow the claims and the treasurer should pay them; and it is so ordered.

BAYLESS, C. J., and OSBORN, CORN, GIBSON, HURST, and DAVISON, JJ., concur. WELCH, V. C. J., and RILEY, J., dissent.